NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSICA C., JOEL A., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.Z., *Appellees.*

No. 1 CA-JV 17-0424
FILED 5-29-2018

Appeal from the Superior Court in Maricopa County
No. JD529489
The Honorable Robert H. Oberbillig, Judge *Retired*

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Jessica C.*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant Joel A.*

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**C A T T A N I**, Judge:

**¶1**        Jessica C. ("Mother") and Joel A. ("Father") appeal the superior court's order severing their parental rights as to their child, J.Z. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        J.Z. was born in July 2010. Father had a relationship with the child early on, but he was convicted of a drug offense when J.Z. was approximately two years old, and he was deported to Mexico (while J.Z. remained in the United States) in mid-2013. Father returned to the United States one year later, but was again incarcerated beginning in mid-2015.

**¶3**        Mother, meanwhile, had a years-long history of abusing methamphetamine. In late 2015, while Father was still incarcerated, the Department of Child Safety ("DCS") removed J.Z. from Mother's care due to the risk Mother's methamphetamine use posed to the child. The superior court found J.Z. to be dependent as to both parents.

**¶4**        Over the first ten months of the case, DCS offered Mother a variety of services targeting her substance abuse. DCS referred her for substance abuse treatment three times, but on each occasion Mother either expressly refused services or failed to participate after intake. Mother reported that she had engaged in a different treatment program, but never successfully completed it. DCS also required that Mother complete random drug testing, but she did not call in consistently, did not test consistently even when she did call in, and frequently tested positive (for methamphetamine and on occasion for cocaine) when she did test.

**¶5**        Father last saw J.Z. in mid-2015, and although he had spoken to the child by phone from prison before the dependency, he only sent J.Z. one letter (a drawing) after J.Z. was taken into care. Father was released from confinement around October 2016 and was deported to Mexico, where Mother soon joined him. The DCS case manager and supervisor contacted Father and Mother there in early November 2016 and scheduled weekly

phone calls with J.Z. (to be connected and supervised through a DCS case aide); Mother and Father completed two scheduled calls with the child, but then stopped calling.

¶6        The case manager and supervisor also discussed with Father and Mother services they could obtain through DIF (Mexico's analogue to DCS). The case supervisor then sent a formal request to the Mexican consulate for DIF to provide services for both parents, including parenting classes, substance abuse testing and treatment, and a home study. Father completed several services, including the home study, several parenting classes, and drug tests (negative for included substances).

¶7        Mother, however, ended up in jail in Arizona in December 2016, then contacted DCS in January 2017 to request services in Arizona instead of Mexico. At that time, Mother tested positive for amphetamines and admitted that she had used methamphetamine while in Mexico, but she asserted that her drug use aided rather than hindered her parenting ability. DCS again referred her for drug testing and treatment, but the service was soon closed for non-compliance. Despite requesting services in Arizona, Mother apparently returned to Mexico, without contacting DCS or requesting that DCS put services in place in Mexico.

¶8        In March 2017, DCS moved to terminate Father's and Mother's parental rights. Father thereafter contacted the case manager and sent J.Z. two packages of clothes and toys. As of May 2017, DCS received information that Mother was participating in a substance abuse treatment program in Mexico, but by the end of the month she had left the program and was again in jail in Arizona.

¶9        In July, the superior court found that statutory grounds existed to sever each parent's rights (Father's based on abandonment; Mother's based on chronic substance abuse, nine months' time in care, and fifteen months' time in care), and that severance would be in J.Z.'s best interests. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (3), (8)(a), (c). Mother and Father timely appealed from the termination order, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

¶10        The superior court is authorized to terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a severance ruling for

an abuse of discretion, deferring to the superior court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I. Mother.

**¶11** Each of the three statutory severance grounds applicable to Mother—chronic substance abuse, nine months' time in care, and fifteen months' time in care—require a showing that DCS made reasonable and diligent efforts to preserve the family by providing the parent rehabilitative services. *See* A.R.S. § 8-533(B)(3), (8)(a), (c); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 & n.3, ¶ 12 (App. 2005). To fulfill this requirement, DCS must provide services with a "reasonable prospect of success" to allow the parent an opportunity to become a safe and effective parent; DCS need not, however, provide "every conceivable service" or undertake any measures that would prove futile, and DCS is not responsible for ensuring that the parent in fact participates in the services provided. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 33–34, 37 (App. 1999); *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994); *see also Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31 (App. 2009).

**¶12** Mother argues that the superior court erred by severing her parental rights because DCS failed to provide her with the requisite reunification services; she does not otherwise challenge the severance grounds or the court's best interests finding. Specifically, Mother argues that DCS wrongfully failed to arrange services for her in Mexico after agreeing to do so.

**¶13** Contrary to Mother's assertion, however, the DCS case supervisor did request services for Mother in Mexico. The services were not ultimately put in place in Mexico because Mother returned to the United States soon thereafter and affirmatively requested services be initiated in Arizona instead. DCS initiated those services, but Mother did not participate. Moreover, DCS had provided services for Mother for several months before she briefly moved to Mexico after Father's release, and she failed to participate during that time. Accordingly, the record supports the superior court's finding that DCS made reasonable and diligent efforts to provide Mother appropriate reunification services.

**II.    Father.**

**¶14**        Father argues that the evidence did not support the court's finding that severance was warranted based on abandonment or that severance would be in J.Z.'s best interests.

**¶15**        Section 8-533(B)(1) authorizes severance on the ground that "the parent has abandoned the child."  "Abandonment" is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.  Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).  A finding of abandonment is premised on the parent's conduct, not the parent's subjective intent.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000).  The key consideration is whether, under the particular circumstances of the case, the parent "has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship."  *Id.* at ¶¶ 18, 20; *see also* A.R.S. § 8-531(1).

**¶16**        Father urges that the record did not support an abandonment finding because he had a relationship with J.Z. before the dependency and attempted to maintain that relationship during the dependency.  Father asserts that he attempted to contact J.Z. (albeit unsuccessfully), sent him gifts, and completed services with DIF to facilitate reunification.  But Father last saw J.Z. in mid-2015 (two years before severance), and from December 2015 to October 2016, Father's only communication with J.Z. was a single letter.  After Father's release from prison, DCS arranged weekly phone calls with J.Z., but Father only completed two calls.  Although he testified that he attempted to call and was unable to get through, the record does not reflect that he made any substantial efforts to correct the phone issue.  Father did not provide any support for J.Z. throughout the dependency and did not send any gifts until a few weeks before the severance hearing.  And although Father demonstrated a desire to engage in reunification services, the superior court did not abuse its discretion by concluding that the sum total of Father's contact with the child over the 20-month dependency — one

letter, two phone calls, and two gifts—represented only minimal efforts insufficient to avoid a finding of abandonment.

¶17        Father also argues that the court erred by finding severance to be in J.Z.'s best interests, urging that he showed commitment to completing reunification services and could protect J.Z. from Mother's substance abuse.  Termination is in a child's best interests if the child would benefit from severance or if a continued relationship with the parent would harm the child.  *Mary Lou C.*, 207 Ariz. at 50, ¶ 19.  Evidence that a child is adoptable or that an existing placement is meeting the child's needs may support a best interests finding.  *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶¶ 14–16 (2016).  Ensuring stability and security for the child is "[o]f foremost concern."  *Id.* at 4, ¶ 15.  Here, the record reflects that J.Z. was thriving in a stable and loving placement with relatives who were meeting all his needs and who wished to adopt him.  The superior court thus did not abuse its discretion by finding that severance would serve J.Z.'s best interests.

## CONCLUSION

¶18        For the foregoing reasons, we affirm.

